Mark R. Thierman, Nev. Bar No. 8285
Joshua D. Buck, Nev. Bar No. 12187
Leah L. Jones, Nev. Bar No. 13161
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027
mark@thiermanbuck.com
josh@thiermanbuck.com
leah@thiermanbuck.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES GARNER, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>ACCURATE BACKGROUND, INC, STARBUCKS CORPORATION and DOES 1-50,<br><br>        Defendant(s). | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff CHARLES GARNER ("Plaintiff"), on behalf of himself and the class set forth below, alleges the following:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question, which states, "An action to enforce any liability created

1  under [the FCRA] may be brought in any appropriate United States district court, without

2  regard to the amount in controversy, or in any other court of competent jurisdiction" within the

3  earlier of "2 years after the date of discovery by the plaintiff of the violation that is the basis for

4  such liability" or "5 years after the date on which the violation that is the basis for such liability

5  occurs." 15 U.S.C. § 1681p.

6      2.    Venue is proper in this District because Defendants do business in this judicial

7  district and many of the acts complained of herein occurred in this District.

## PRELIMINARY STATEMENT

9      3.    This class action is brought pursuant to the Fair Credit Reporting Act ("FCRA")

10  against Defendant ACCURATE BACKGROUND, INC. and STARBUCKS CORPORATION

11  ("Defendants"), for the acquisition and use of consumer and/or investigative consumer reports

12  to conduct background and credit checks on Plaintiff and other prospective employees on

13  behalf of Starbucks.

14      4.    Defendant provides employee background screening services for Fortune 500

15  companies including Starbucks, Ross Dress For Less, Cheesecake Factory, Sephora, Crate &

16  Barrel, and Health Net among others. *See* Featured Clients at

17  http://accuratebackground.com/products/ last visited December 16, 2016. Defendant provides

18  the information in background and credit reports to its clients who make employment related

19  decisions for prospective and current employees based on the information Defendant provides.

20  *Id.*

21      5.    Defendants fail to comply with federal mandates for obtaining and using

22  background and credit reports for employment purposes.

23      6.    Defendants routinely violated the FCRA's core protections by procuring

24  background and credit reports on job applicants without providing a "stand alone" disclosure

25  that a background and credit report would be procured. Instead, Defendants willfully included

26  extraneous information such as a "release of liability" in an effort to shield itself from its

27  unlawful acts. *See, e.g.*, *Harris v. Home Depot U.S.A., Inc.*, 2015 WL 4270313, at *1 (N.D.

28  Cal. June 30, 2015) (citing *Letter from William Haynes*, Attorney, Div. of Credit Practices, Fed.

Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998)); *see also Reardon v. ClosetMaid Corp.*, 2013 WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013) ("[The] inclusion of a release provision in the Authorization Form . . . facially violates section 1681b(b)(2)(A)(i).").

7. Under the FCRA, an employer or prospective employer cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless . . . a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure***, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).

8. Defendants have willfully and systematically violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the FCRA.

9. Based on Defendants' conduct, Plaintiff asserts FCRA claims on behalf of himself and the class defined below. On behalf of himself and the class, Plaintiff seeks statutory damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

**PARTIES**

10. Plaintiff CHARLES GARNER ("Gardner") is a natural person who has resided in the Reno/Sparks area since 1997 for about ten years, lived in Las Vegas for approximately one year and has been living in Sparks since about 2008, and is a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

11. Defendant ACCURATE BACKGROUND, INC. ("Accurate") is a privately held company with a principal place of business at 7515 Irvine Center Drive, Irvine, California, 92618, and is a "person" within the meaning of 15 U.S.C. § 1681a(b).

12. Defendant STARBUCKS CORPORATION ("Starbucks") is a publicly traded company, incorporated under the laws of the state of Washington, headquartered in Seattle,

Washington. Starbucks sells coffee-based beverages, teas, merchandise, and food at 13,000+ locations in the United States. Starbucks is a "person" within the meaning of 15 U.S.C. § 1681a(b).

13. Collectively, ACCURATE BACKGROUND, INC. and STARBUCKS CORPORATION are referred to herein as "Defendant" or "Defendants."

14. The identity of DOES 1-50 is unknown at this time and this Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each Defendant sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," shall mean "Defendants and each of them."

## FACTUAL ALLEGATIONS

15. On or about October 1, 2016 Plaintiff posted his resume on Monster.com.

16. October 25, 2016, Plaintiff was contacted by a Starbucks Coffee Company ("Starbucks") recruiter indicating that Starbucks would like to schedule a phone interview for a Maintenance Technician position at the Minden, Nevada roasting plant. *See* Exhibit A, attached hereto, email thread dated October 25, 2016, Subject: Starbucks Opportunity, hereinafter "10/24/16 email."

17. October 27, 2016, Plaintiff received an invitation for phone interview from Jason Hall, a recruiter for Starbucks ("Recruiter Hall"). *See* Exhibit B, attached hereto, email thread dated October 28, 2016, Subject: Re: Starbucks Interview Confirmation, hereinafter, "10/28/16 email."

18. Plaintiff participated in two phone interviews with Recruiter Hall. The first interview was an informational interview that lasted approximately 10 minutes where Recruiter Hall gathered general background information and told Plaintiff that there were two open positions, (1) a maintenance technician and (2) a maintenance mechanic.

19. October 28, 2016, Recruiter Hall sent Plaintiff an email requesting a follow up interview with the Maintenance Manager. *See* Exhibit C, attached hereto, email thread dated November 1, 2016, Subject: Starbucks Opportunity, hereinafter "11/1/2016 email." The

interview was ultimately set for Nov. 2, 2016. *Id.* This second interview took place approximately one week later and took approximately 45 minutes. This interview was an actual job interview where Recruiter Hall went over Plaintiff's job qualifications, education, training, his feelings about Starbucks, and whether or not he would be a good fit for the job maintenance technician.

20. November 4, 2016, Recruiter Hall invited Plaintiff for a third interview and tour of the Minden roasting plant. *See* Exhibit D, attached hereto, email thread dated November 4, 2016 Subject: Re: Starbucks Interview Confirmation, hereinafter "11/4/2016 email." In this email, Recruiter Hall instructed Plaintiff to review a set of attached documents, print them out, sign them, and bring them with Plaintiff to the third interview at the plant. *Id.*

21. The documents included in the 11/4/2016 email were: (1) the Minden Roasting Plant Rules, (2) Disclaimer for injuries that may happen while at the Roasting Plaint, (3) Site Safety Procedures, and (4) Directions to the Minden Roasting Plant. Plaintiff did as instructed, printed out, reviewed, signed the documents, and brought them with him to the roasting plant interview. Plaintiff gave the completed signed documents to the security officer (name unknown) seated at the front desk of the Minden Roasting Plant upon arrival for the third interview.

22. November 7, 2016, Plaintiff attended the third interview with which was actually a panel interview with the Maintenance Manager (Jonathan Springer) and three maintenance technicians at the Minden, Nevada roasting plant. At the close of that interview, the Maintenance Manager indicated that it had gone well and that someone from Starbucks would be contacting Plaintiff.

23. November 8, 2016, Recruiter Hall contacted Plaintiff and indicated that Starbucks had liked what they had heard and seen at the interview and that the job of Maintenance Technician was Plaintiff's if he wanted it. Plaintiff said that he did want the job. Recruiter Hall quoted him a rate of $21.76 for the first six months of employment with a raise to $22.76 after six months, immediate medical and dental benefits, immediate 401K contributions, and the immediate availability of two weeks paid vacation.

24. November 8, 2016, Plaintiff received an email from the Starbucks Talent Acquisition Team indicating that Plaintiff must complete and pass a background check. *See* Exhibit E, attached hereto, email thread dated November 8, 2016, Subject: Starbucks Authorization and Disclosure Request: Action Required, hereinafter "11/8/16 email." The email indicated a Starbucks' organizational contact would contact Plaintiff "once the background check and drug screen process was complete." *Id.*

25. November 9, 2016, Recruiter Hall sent the background check to Plaintiff. *See* Exhibit F, attached hereto, email thread dated November 18, 2016, Subject: Starbucks Coffee Drug Screen Step, hereinafter "11/18/16 Hall email." The Accurate Background, Inc. Personal Identification Information form that included the "Authorization For Release Of Information" was attached and a blank copy of which is attached as Exhibit G, hereinafter, "Accurate Authorization."

26. Defendants provided Plaintiff with a 2-page document, the last page at paragraph 4, consisted of and authorization to conduct a background report *and* a release of liability from obtaining the background report:

> **4.**
> I hereby **release from liability and promise to hold harmless** under Any and all Causes of legal action, the State of Nevada, its officer(s), agent(s) and/or employee(s) who conducted my criminal history records search and provided information to the requestor for any statement(s), omission(s), or infringement(s) upon **my current legal rights.** I further **release and promise to hold harmless** and covenant not to sue any person, firms, institutions or agencies providing such information to the State of Nevada on the basis of their disclosures. I have signed this release voluntarily of my own free will.

27. Based on the requirement that Plaintiff "release from liability and promise to hold harmless" and "covenant not to sue any persons, firms, institutions or agencies" providing background information to Defendants, contained in paragraph 4 of Exhibit G, Plaintiff marked out the language waiving his "current legal rights," initialed and dated the strike, but completed the remaining portions of the Authorization. *See* Exhibit H, attached hereto, completed

Accurate Background, Inc. Personal Identification Information/Authorization For Release Of Information, hereinafter "Completed/Strike Authorization."

28. November 10, 2016, Plaintiff was contacted by Defendants indicating that Defendants were conducting the screening on behalf of Starbucks. *See* Exhibit I, attached hereto, email thread dated November 10, 2016, Subject: Re: Special Release Needed – Starbucks Coffee Company – Garner, Charles – Search ID: 61123633, hereinafter "11/10/16 email."

29. Plaintiff replied to Defendants' 11/10/2016 email that he was "more than happy to sign documents needed to allow [Defendant] to perform a background check, [but that he] would not sign anything that asks [him] to waive [his] rights." *See* Exhibit F.

30. Also on November 10, 2016, Plaintiff provided a urine sample to Concentra medical Centers and upon information and belief he passed the drug screening. *See* Exhibit J, attached hereto, Concentra Medical Centers eScreen Drug test PrePlacement receipt, hereinafter "Drug Screening Receipt" dated November 10, 2016.

31. December 2, 2016, Starbucks replied to Plaintiff's inquiry regarding the waiver and stated, "Unfortunately, the background check cannot move forward until the complete the (sic) NV Release form (attached) [Exhibit G] without crossing any items out or changing any of the words." *See* Exhibit K, attached hereto, email thread dated December 2, 2016, Subject: Action Needed: Nevada Release Form, hereinafter "12/2/2016 email."

32. Plaintiff has steadfastly refused to sign the background check authorization form that contained an unlawful waiver and release of liability. As a result, Plaintiff has suffered significant harm. Plaintiff was never placed on the schedule as a Maintenance Technician at the Minden, Nevada Starbucks roasting plant as promised. He has ultimately been denied employment at Starbucks as a result of Defendants' defective background authorization and their unlawful request that he waive all his rights associated with the procurement of a background report on Plaintiff. To add insult to injury, Plaintiff stopped looking for work upon Starbucks' representation that he had the job at his third interview on November 8, 2016. As a result of Defendants' defective background check, Plaintiff has suffered economic loss in the

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com; www.thiermanbuck.com

form of loss wages of $21.76 per hour, 40 hours per week for the period of one week from Plaintiff's completion of the required forms and drug screening, or November 17, 2016 to the present.

33. December 15, 2016, Recruiter Hall left a voice mail for Plaintiff asking Plaintiff if he was still opposed to signing the authorization. Plaintiff is not willing to sign Defendants' defective authorization but is still interested in the job.

34. Putative class members have also been damaged as a result of Defendants' unlawful disclosure in 2 ways. First, in the event that putative class members were as well-informed as Plaintiff and refused to sign a form releasing their legal rights, those putative class members have been unlawfully denied employment. Second, in the event that putative class members signed the unlawful authorization, those putative class members have been forced to alter their legal recourse and remedies against Defendants.

35. At no time did Defendants provide Plaintiff with a document consisting solely of a legal disclosure that they would be conducting a background report.

36. Upon information and belief, Defendants require all prospective employees to submit to the same background investigative report that (1) violates § 1681(b)(2)(A) of the FCRA because it includes an exculpatory clause.

## CLASS ACTION ALLEGATIONS

37. Plaintiff asserts his claim on behalf of the following Class of individuals:

**All person who were presented with an authorization for release of information that contains a waiver and release of liability clause by Defendants in order to gain employment at any time within 5 years prior to the filing of the Complaint up to and including judgment.**

38. **Numerosity**: The class is so numerous that joinder of all class members is impracticable. Defendants regularly uses its disclosure to procure background reports on current employees and job applicants. Hundreds if not thousands of the job applicants who must sign an authorization for release of information that contains a waiver and release of liability clause to gain employment satisfy the class definition.

39. **Typicality**: Plaintiffs' claims are typical of the members of the class. Defendants typically use an identical disclosure to procure background reports on prospective and existing employees. The FCRA violations suffered by Plaintiff is typical of those suffered by other class members, and Defendants treated Plaintiff consistent with other class members in accordance with its standard practices.

40. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

41. **Commonality**: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class, including but not limited to:

(a) Whether Defendants procured background reports on prospective and existing employees;

(b) Whether Defendants violated the FCRA by procuring such background reports without a FCRA-compliant disclosure;

(c) Whether Defendants' FCRA violations were willful;

(d) The proper measure of statutory damages; and

(e) The proper measure of punitive damages.

42. **Predominance/Superiority**: Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification will also preclude the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

43. Plaintiff intends to send notice to all members of the class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the class members are available from Defendants' records.

## FIRST CAUSE OF ACTION

**Procuring Consumer Reports without First Making Proper Disclosures**

**15 U.S.C. § 1681b(b)(2)(A)(i)**

(On Behalf of Plaintiff and the Class Against Defendants)

44. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

45. Defendants procured consumer reports, as defined by the FCRA, on Plaintiff and all class members. These reports were procured for employment purposes without first providing Plaintiff or any class member a clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(i).

46. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(i). Defendants' willful conduct is reflected by, *inter alia*, the following:

    (a) The FCRA was enacted in 1970; Defendants have had over 40 years to become compliant;

    (b) Defendants' conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c) Defendants knew or had reason to know that its conduct violated the FCRA;

    (e) Defendants repeatedly and routinely uses the disclosure it used with Plaintiff to procure consumer reports;

    (f) Defendants' inclusion of a liability release clearly implies awareness by Defendants that it could be held liable for improperly procuring a consumer report;

(g) Despite the pellucid statutory text and there being a depth of guidance, Defendants' systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(h) By adopting such a policy, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

47. As a result of the facts alleged above, Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

48. As a result of the facts alleged above, Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

49. As a result of the facts alleged above, Plaintiff, individually is entitled to compensatory damages from November 17, 2017 up to hire date or upon judgement, whichever date comes first in the amount of $21.76 per hour for a 40-hour workweek, or $870.40 per week.

50. As a result of the facts alleged above, Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the class, prays for relief as follows:

1. Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;
2. Designating Plaintiff as Class Representative and designating Plaintiff's Counsel as counsel for the class;
3. Issuing proper notice to the class at Defendants' expense;

4. Declaring that Defendants committed multiple, separate violations of the FCRA;

5. Declaring that Defendants acted willfully, in deliberate or reckless disregard of Plaintiff's and class members' rights and Defendants' obligations under the FCRA;

6. Awarding compensatory damages according to proof for Plaintiff;

7. Awarding statutory and punitive damages as provided by the FCRA;

8. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

9. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

DATED: January 9, 2017                         THIERMAN BUCK LLP

/s/ *Leah L. Jones*
Mark R. Thierman
Joshua D. Buck
Leah L. Jones

*Attorneys for Plaintiff*

**Exhibit List**

A. Email Thread Dated October 25, 2016, Subject: Starbucks Opportunity

B. Email Thread Dated October 28, 2016, Subject: Re: Starbucks Interview Confirmation

C. Email Thread Dated November 1, 2016, Subject: Starbucks Opportunity

D. Email Thread Dated November 4, 2016 Subject: Re: Starbucks Interview Confirmation

E. Email Thread Dated November 8, 2016, Subject: Starbucks Authorization and Disclosure Request: Action Required

F. Email Thread Dated November 18, 2016, Subject: Starbucks Coffee Drug Screen Step

G. Authorization For Release Of Information

H. Completed Accurate Background, Inc. Personal Identification Information/Authorization For Release Of Information

I. Email Thread Dated November 10, 2016, Subject: Re: Special Release Needed – Starbucks Coffee Company – Garner, Charles – Search ID: 61123633

J. Concentra Medical Centers eScreen Drug Test PrePlacement receipt

K. Email Thread Dated December 2, 2016, Subject: Action Needed: Nevada Release Form